IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PHILIP HAYES, #B88878, )<br>    )<br>    Plaintiff, )<br>    )<br>v.   )<br>    )<br>DEE DEE BROOKHART, *et al.*, )<br>    )<br>    Defendants. ) | Case No. 20-cv-944-RJD |

## ORDER

**DALY, Magistrate Judge[1]:**

Plaintiff Philip Hayes, an inmate of the Illinois Department of Corrections ("IDOC"), filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for an alleged deprivation of his constitutional rights at Lawrence Correctional Center. (Doc. 1). Plaintiff alleges that Defendants failed to provide adequate mental healthcare following the death of his great aunt, in violation of his Eighth Amendment rights, forcing him to declare a hunger strike for adequate treatment. (*Id.* at 10-11; Doc. 13 at 12-13). Plaintiff further alleges that Defendants retaliated against him for his hunger strike by issuing disciplinary tickets followed by sham adjudicative review proceedings, thus infringing on his First Amendment rights and due process rights under the Fourteenth Amendment. (Doc. 1 at 10-16). After threshold review of the Complaint pursuant to 28 U.S.C. § 1915A, Plaintiff was allowed to proceed on the following claims:

---

[1] This case has been assigned to the undersigned to conduct all proceedings, including trial and entry of final judgment, through the parties' full consent in accordance with the provisions of Title 28 U.S.C. Section 636(c) and Federal Rule of Civil Procedure 73. (Doc. 23)

Page **1** of **18**

> Count 1: Eighth Amendment deliberate indifference to serious medical/mental health needs claim against Crawford and Gibbs for denying Plaintiff mental health care on November 29, 2019.
>
> Count 2: First Amendment claim against Crawford, Brookhart, and Young for issuing false disciplinary tickets to Plaintiff in retaliation for Plaintiff complaining about his conditions of confinement by going on a hunger strike regarding the denial of his requests for mental health care on November 29, 2019.
>
> Count 3: First Amendment claim against Williams and Mayberry for finding Plaintiff guilty of false disciplinary tickets and against Williams, Mayberry, and Brookhart for punishing Plaintiff on false disciplinary tickets in retaliation for Plaintiff complaining about his conditions of confinement by going on a hunger strike regarding the denial of his requests for mental health care on November 29, 2019.
>
> Count 4: Fourteenth Amendment due process claim against Crawford, Brookhart, Young, Williams, and Mayberry for their participation in sham disciplinary proceedings.

(Doc. 13). Thereafter, Defendants filed a motion for summary judgment (Doc. 40), which the Court granted in part and denied in part. (Doc. 49). The Court dismissed all counts of the Complaint with the exception of Count 4 against Defendants Young, Brookhart, Mayberry, and Williams. (*Id.*).

Now pending before the Court is Defendants' Motion for reconsideration of the Court's order denying dismissal as to those Defendants. (Doc. 57). Plaintiff did not file a response. For the reasons set forth below, Defendants' motion is **DENIED.**

## Background

At all times relevant to the Complaint, Plaintiff was incarcerated at Lawrence Correctional Center in disciplinary segregation.[2] Approximately a week prior to November 29, 2019, Plaintiff

---

[2] This section incorporates relevant portions of Defendants' statement of fact that the Court deemed admitted in its Order on Plaintiff's motion for summary judgment as well as relevant portions of Plaintiff's

received news that his aunt, his grandmother's sister, had passed away. Plaintiff alleged that the following days, he sought mental health care, which Defendants allegedly denied. Defendants countered that Plaintiff received mental health treatment during the relevant period, including group therapy sessions, and was also assessed low risk for suicide potential.

On November 29, 2019, Plaintiff spoke to Defendants Crawford and Gibbs, requesting to see a mental health professional. Plaintiff was instructed to put in a written request to see a mental health professional. At approximately 10:20 a.m. on November 29, 2019, Plaintiff declared a hunger strike to Defendant Gibbs. Plaintiff's hunger strike report indicates that Plaintiff did not provide a reason for beginning his hunger strike. Plaintiff maintained that he ended his hunger strike on the evening of November 29, 2019, by accepting his dinner tray.

Plaintiff testified that on November 30, 2019, Defendant Young visited Plaintiff to question him about the ongoing hunger strike and his affiliation with the other inmates who had also gone on hunger strike that same day. Plaintiff informed Young that his hunger strike was unrelated to the other inmates' orchestrated hunger strike. Plaintiff further referred Young to the incident report Gibbs had prepared, which allegedly listed the death of a family member as a basis for Plaintiff's hunger strike. Young responded that he had no access to the report because it was forwarded to "the nurses or somebody like that." On that same day, Defendant Young issued a disciplinary report against Plaintiff for two counts: (1) Dangerous disturbance and (2) Security Threat Group or Unauthorized Organizational Activity. In his report, Defendant Young stated that he entered the A-Wing of Segregation and discovered that six offenders had declared hunger strike at the same time. Interviewing confidential sources, Defendant Young determined that the hunger strikes

---

deposition, which the Court considered in ruling on the motion. (Doc. 49 at 4-9).

were an organized protest against the Segregation Wing's restriction from access to the Christmas shop.  Plaintiff was one of three inmates identified by two confidential sources as a leading voice behind the protest.  Plaintiff was served with the disciplinary report on December 2, 2019, at 10:16 p.m., but refused to sign.  Plaintiff further testified that when the erroneous disciplinary ticket was delivered to him, the correctional officer, whom Plaintiff did not identify as one of the Defendants, did not provide him with any writing utensils to list his requested witnesses.  (Doc. 41-1 at 19).  Plaintiff verbally asked the unknown correctional officer for two witnesses: Defendant Gibbs and Plaintiff's cellmate, who was present when Plaintiff reported the reason for his hunger strike to Gibbs.  (*Id.* at 19-20).  The unknown correctional officer responded that Defendant Gibbs's testimony would not be needed because they already had his statement.  (*Id.* at 19).

On December 4, 2019, Plaintiff attended an Adjustment Committee hearing regarding his disciplinary report issued on November 30, 2019.  Defendants Williams and Mayberry were present as chairs of the hearing committee.  Upon review of the disciplinary report, Plaintiff pled not guilty to all charges and argued that he was the only person who went on hunger strike on the first shift and that he was doing his "own thing" for his "own reasons."  Plaintiff further averred that Young issued the erroneous disciplinary ticket because he believed Plaintiff went on a hunger strike at the same time as everybody else and because he failed to conduct a proper investigation and review Plaintiff's hunger strike report.  According to Plaintiff, the hunger strike report documented Plaintiff's stated reason for his hunger strike as well as the fact that he initiated his hunger strike a shift earlier than the other inmates.  In addition to Plaintiff's testimony, the Adjustment Committee called Officer Young, who verified the reliability of the confidential witnesses.  None of Plaintiff's requested witnesses was called at the hearing.  Defendant Brookhart

found Plaintiff guilty of all charges and issued a final disciplinary action on December 10, 2019, including the following: Six (6) Months C-Grade Designation; Six (6) Months Segregation; A Disciplinary Transfer; and Six (6) Months Contact Visits Restriction.

Plaintiff was transferred to Pontiac in late December 2019. While in segregation, Plaintiff testified that his mental health deteriorated. He was sleep-deprived, had "feces throw[n] in [his] face," became suicidal, and was on crisis watch. On January 21, 2020, the Administrative Review Board ("ARB") received Plaintiff's grievance dated January 5, 2020, in which Plaintiff stated that he had gone on a hunger strike to get the attention of a mental health professional regarding the loss of a relative. Plaintiff requested that his disciplinary action be expunged because he was not a part of the hunger strikes on November 30, 2019. Plaintiff further argued that the members of the Adjustment Committee, Defendants Mayberry and Williams, found him guilty based on Defendant Young's erroneous investigative report and that during the disciplinary hearing, Defendant Mayberry told him that "the warden went on with everybody involved in this" and "they want this to happen and this is what they're going to make sure happens."

On July 21, 2020, the ARB reviewed Plaintiff's disciplinary ticket and ultimately ordered expungement of the November 30, 2019, disciplinary report. Plaintiff received numerous other disciplinary tickets and actions prior to and after the November 30, 2019, disciplinary ticket. Plaintiff served time in segregation for other disciplinary actions. Expungement of the ticket removed the disciplinary actions from Plaintiff's record. While the ticket was expunged from his record on July 21, 2020, Plaintiff testified that by that time, he had already been transferred to Pontiac and had already served his full sentence imposed for the hunger strike disciplinary ticket, including the visitation restrictions.

*Motion for Reconsideration Standard*

Under Rule 54(b), the Court may revise any order adjudicating fewer than all the claims at any time before the entry of judgment that adjudicates all the claims and the rights and liabilities of all the parties. FED. R. CIV. PRO 54(b). Motions to reconsider an order under Rule 54(b) are judged largely by the same standards as motions to alter or amend a judgment under Rule 59(e), "to correct manifest errors of law or fact or to present newly discovered evidence." *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987) (citation omitted). A motion to reconsider is also appropriate where there is "a controlling or significant change in the law or facts since the submission of the issue to the Court." *Bank of Waunakee v. Rochester Cheese Sales, Inc.,* 906 F.2d 1185, 1191 (7th Cir. 1990). Reconsideration is, however, not appropriate for "rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996).

*Summary Judgment Standard*

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

## **Discussion**

Defendants ask the Court to reconsider its partial denial of summary judgment as to Count 4 of Plaintiff's Complaint against Defendants Young, Brookhart, Mayberry, and Williams. (Doc. 49 at 23-30). In denying summary judgment as to that claim, the Court found that Plaintiff's placement in disciplinary segregation for six months was a liberty interest that could potentially trigger the protection of the Due Process Clause.[3] The Court further found that Plaintiff's deposition called into question two procedural safeguards: the impartiality of the adjustment committee and the opportunity to call witnesses. While the Court ultimately held that Plaintiff could not prevail for lack of opportunity to call witnesses because he failed to provide any evidence implicating any of the named Defendants in failing to honor his request for witnesses, it did find that Plaintiff's testimony could sufficiently call into question the impartiality of the adjustment committee. Specifically, the Court pointed to Plaintiff's deposition wherein he stated that Defendant Mayberry told him that "the warden went on with everybody involved in this" and "they want this to happen, and this is what they're going to make sure happens." Drawing all reasonable inferences in Plaintiff's favor, the Court concluded that Plaintiff's testimony could support a

---

[3] An inmate who raises a due process claim for a disciplinary proceeding must demonstrate first, a deprivation of a liberty interest and, second, that "the procedures he was afforded were constitutionally deficient." *Lisle v. Welborn*, 933 F.3d 705, 720 (7th Cir. 2019) (citation omitted).

finding of Defendant Brookhart's interference with Defendant Young's investigation and Defendants Mayberry and Williams's decisions at the disciplinary hearing, in violation of Plaintiff's right to an impartial decision-maker. The Court further rejected Defendants' argument that the ARB's expungement of the hunger strike disciplinary ticket corrected any due process violation. The Court explained that the ARB's expungement of the ticket did not bar Plaintiff's due process claim because Plaintiff had already served six months in segregation, and there was a question of fact as to whether that time in segregation was attributable to the hunger strike ticket or to other offenses.

Defendants now argue that after briefing was completed on their motion for summary judgment, the Seventh Circuit ruled on two relevant cases that warrant reconsideration. Defendants call the Court's attention to the Seventh Circuit opinion in *Adams v. Reagle*, 91 F.4th 880 (7th Cir. 2024), which was decided while the Defendants' motion for summary judgment was pending, as well as the Seventh Circuit decision in *Ealy v. Watson*, 109 F.4th 958, 965 (7th Cir. 2024). The issue presented here is whether the ARB's expungement of the hunger strike disciplinary ticket after Plaintiff had already served six months in segregation for said offense corrected any alleged due process violation of the hunger strike's disciplinary hearing, putting a bar on Plaintiff's due process claim.[4]

In partially denying Defendants' motion for summary judgment as to Count 4, the Court

---

[4] As set forth in the Court's Order denying in part Defendants' motion for summary judgment, there is a question of fact as to whether some of the time Plaintiff spent in disciplinary segregation was for the later expunged hunger strike disciplinary ticket or for other disciplinary actions. Drawing all reasonable inference in favor of Plaintiff, as the Court should do in ruling on a motion for summary judgment, the Court will assume for the purposes of this motion that the six months Plaintiff spent in segregation were for the later expunged hunger strike ticket.

primarily relied on *Morissette v. Peters*, 45 F.3d 1119, 1121–22 (7th Cir. 1995). There, an inmate brought a due process claim for being erroneously charged with possession of marijuana as "dangerous contraband." *Morissette*, 45 F.3d at 1121-22. The charge was later reversed by the ARB on the basis that marijuana did not qualify as dangerous contraband. *Id.* The Seventh Circuit reversed the magistrate judge's finding of a due process violation, holding that ARB's reversal of the erroneous charge cured any prior procedural error. *Id.* The court explained that "[t]he administrative appeal process is part of the due process afforded prisoners" and that there is "no denial of due process if the error the inmate complains of is corrected in the administrative appeal process." *Morissette*, 45 F.3d at 1122. In *dicta*, however, the *Morissette* court suggested that this rule may only apply when the administrative appeal corrects the "procedural error *before* the punishment has begun." *Id.* at n.4 (7th Cir. 1994) (citing *Walker v. Bates*, 23 F.3d 652, 657-59 (2d Cir. 1994), *cert. denied*, 515 U.S. 1157 (1995) (emphasis added)). The *Morissette* court pointed to *Walker*'s reasoning: "if the prisoner has begun his punishment before the defect is cured on appeal, the prison board is answerable in damages absent a successful qualified immunity defense. Once the cause of action accrues, nothing the state subsequently does can cut off the Section 1983 action." *Id.* (internal citations omitted). Ultimately, the Seventh Circuit concluded that the rule announced in *Walker* did not apply because, unlike *Walker*, any extra days Morissette served for the erroneous disciplinary ticket were credited to subsequent sentences for different offenses, so that Morissette did not serve any additional time in segregation due to the erroneous disciplinary action. *Id.*

Thereafter, the Seventh Circuit restated that principle in its non-precedential decision, *Williams v. Brown*. 849 F. App'x 154, 157 (7th Cir. 2021). There, Williams, an inmate at Pontiac

Correction Center, asserted a due process claim against prison officials alleging that he was issued a disciplinary report that omitted necessary information, that he was not allowed to call witnesses at his disciplinary hearing, and that—as a consequence of the due process violations—he suffered lengthy confinement to a segregation cell with poor conditions. *Id.* at 156. The district court dismissed the complaint for failure to state a claim, holding that Williams had been afforded all the process he was due because the ARB later expunged the disciplinary infraction at issue. *Id.* Williams appealed, arguing that he had properly stated a due process claim because the expungement occurred five months after he had completed his time in disciplinary segregation. *Id.* at 157. The appellate court sided with Williams and reversed the dismissal, finding that given the prolonged time Williams had spent in segregation and the conditions he alleged to have endured there, the ARB's later administrative reversal and expungement did not bar his due process claim. *Id.* The court reasoned that while an administrative appeal can satisfy due process where it cures the procedural defect and safeguards the inmate's protected interest, this is not the case where the expungement comes after an inmate has already served a lengthy period in punitive segregation. *Id.* (citing *Morissette v. Peters*, 45 F.3d 1119, 1121–22 (7th Cir. 1995); *Frank v. Schultz*, 808 F.3d 762, 764 (9th Cir. 2015); *Hardaway v. Meyerhoff*, 734 F.3d 740, 743–45 (7th Cir. 2013)).

Many district courts in this Circuit have followed the *Williams* court approach. *See, e.g.*, *Haynes v. Wills*, No. 23-CV-03512-SMY, 2024 WL 2700684, at *4 (S.D. Ill. May 24, 2024) (allowing Plaintiff to proceed with his due process claim for the 5½ months of unnecessary punishment in segregation, which was later expunged through administrative appeal because the "administrative appeal must correct the procedural error before the punishment begins") (citation

omitted); *Miles v. Wills*, No. 23-CV-03087-SMY, 2023 WL 8653077, at *3 (S.D. Ill. Dec. 14, 2023) (adopting the *Williams* court's approach that the "administrative appeal must correct the procedural error before the punishment begins," and allowing Plaintiff to proceed on his due process claim for being placed in unnecessary segregation because Plaintiff had already endured all 3 months of punishment before his disciplinary ticket was expunged); *Miller v. Butler-Jones*, No. 21-CV-2189-JBM, 2021 WL 5310895, at *2 (C.D. Ill. Nov. 15, 2021) ("Where the underlying offense is expunged, a plaintiff might well be foreclosed from asserting a due process claim . . . [but this] is not the case, however, where the expungement comes too late to safeguard a protected liberty interest"); *Trainauskas v. Fralicker*, No. 18-CV-193-NJR, 2018 WL 1183867, at *4 (S.D. Ill. Mar. 7, 2018) (adopting the *Morissette dicta* that an administrative appeal may correct the "procedural error before the punishment has begun," and thus allowing the plaintiff to proceed with his due process claim for the four months he served in disciplinary segregation even though the relevant offense was later expunged through administrative appeal); *see also Williams v. Clark*, No. 99 C 3680, 1999 WL 521175, at *1 (N.D. Ill. July 6, 1999) (finding that an inmate could not proceed in his due process claim for deficiency in a disciplinary proceeding because, through the administrative appeal, the inmate's "good time was restored, his grade demotion was reversed, and *he was granted unassigned pay for the time he had spent in segregation*."). While few district courts addressing the same issue have reached the opposite conclusion, those decisions were issued prior to the Seventh Circuit's decision in *Williams*. *See, e.g.*, *Davis v. Babish*, No. 06 C 4638, 2007 WL 2088798, at *4 (N.D. Ill. July 20, 2007) ("Even if this Court were to assume that Davis's record was expunged after he had already been punished, the *Sandin* Court upheld summary judgment on behalf of prison officials even though the prisoner had already served his sentence in

disciplinary segregation before his disciplinary conviction was overturned and his disciplinary record expunged); *Rose v. Garbs*, No. 99 C 2620, 1999 WL 299892, at *2 (N.D. Ill. May 4, 1999) (noting that it was "unfortunate that the plaintiff had already served his month in segregation before the disciplinary finding was invalidated," but nonetheless concluding that the plaintiff's claim that he was wrongfully disciplined for the fight when he was the victim could not proceed because the prison system eventually expunged the disciplinary report).

Defendants, however, call the Court's attention to *Adams*, which was decided after the summary judgment briefing in this case was completed.  They argue that under *Adams*, expungement of a conviction for which an inmate served time in disciplinary segregation bars an inmate's due process claim for any prior procedural deficiencies, even if the inmate has already served his time in segregation.  In *Adams*, the plaintiff, Adams, was allegedly involved in an assault on another inmate at Plainfield Correctional Facility in February 2017.  *Adams*, 91 F.4th at 882-83.  Among Adams' claims was, as here, an allegation that his due process rights had been denied through deprivation of an impartial tribunal and the denial of his right to call witnesses.  *Id*. at 888.

Originally, Adams was charged with the offense of engaging in criminal gang activity (the "assault charge") for being involved in an assault against another inmate.  Disciplinary Hearing Officer J. Peltier conducted a hearing but did not allow Adams live testimony or witnesses and resolved the matter based on the written statements submitted.  *Adams*, 91 F.4th at 882.  Adams was found guilty and was sanctioned with one year in disciplinary segregation and the loss of 180 days of earned good time credits.  *Id.*

Ten days later, another officer conducted a reclassification hearing and determined that Adams should be reclassified to department-wide restrictive housing for a period of two years due

to having committed eight different conduct violations within one year, with the assault offense constituting one of those violations. *Adams*, 91 F.4th at 883. The cited reasons for the reclassification were "poor adjustment," "disciplinary," "threat to facility security," "recent negative adjustment," and "departmental needs." *Id.* The decision was not attributable to any single incident but rather to the aggregation of multiple violations. *Id.* Pursuant to the reclassification, Adams was transferred to the Wabash Valley Correctional Facility and was to remain in department-wide restrictive housing for a period of two years. *Id.* at 883-84.

Thereafter, Adams challenged the assault charge both through the administrative appeal process and through a habeas petition alleging, *inter alia*, due process violations for denying him the right to call witnesses at the disciplinary hearing. *Adams*, 91 F.4th at 884. These proceedings resulted in the final reviewing authority issuing a letter designating Adams' disciplinary case for rehearing and vacating all sanctions imposed. *Id.* Soon thereafter, however, the prison amended the original charge for the assault case to the offense of conspiracy to commit assault and battery. *Id.* Disciplinary Hearing Officer H. Andrews conducted the rehearing of the amended charge and denied Adams' request to call witnesses. *Id.* Andrews convicted Adams of the assault charge and imposed substantially the same penalties that had been imposed at the original conviction. *Id.*

Thereafter, the prison again reclassified Adams to department-wide administrative restrictive housing. *Adams*, 91 F.4th at 884-85. This reclassification came after the final prison reviewing authority vacated all sanctions imposed on Adams due to his drug trafficking offense, which was one of the predicates of his original reclassification decision. *Id.* The new reclassification decision took into account the seven conduct violations of which Adams had been found guilty in the previous two years, including his involvement in the assault and battery. *Id.*

In the meanwhile, Adams had appealed the disciplinary conviction on the amended assault charge through prison hierarchy and a habeas petition, arguing that his requests for live witness testimony and other evidence had been denied in violation of his due process rights. *Adams*, 91 F.4th at 884.  Adams further raised a due process claim for the denial of an impartial decisionmaker. *See Adams v. Superintendent*, No. 217CV00546JMSMJD, 2018 WL 4077022, at *3 (S.D. Ind. Aug. 27, 2018) ("*Adams II*").  Adams ultimately prevailed on his habeas petition on the basis that Andrews had improperly denied him the right to call witnesses.  The habeas court ordered that two of the three sanctions that had been imposed—the revocation of 360 days of good time credit and the demotion from credit-earning class 2 to class 3—be vacated. *Adams*, 91 F.4th at 885.  The court did not address the denial of an impartial arbitral. *Id.*

Adams was then charged for a third and final time in connection with the assault, with the new modified charge being aiding/attempted/conspiracy to assault. *Adams*, 91 F.4th at 885.  After a hearing at which Adams was allowed to call some but not all of the witnesses he requested, Disciplinary Hearing Officer Carpenter found Adams guilty.  But on December 3, 2018, pursuant to Adams' internal administrative appeal, the warden dismissed the conduct report and expunged the sanctions on the ground that the allegations against Adams were too vague, thereby bringing the matter to a close.  By that time, however, Adams had already served 730 days (two years) in restrictive housing pursuant to the reclassification decision. *Id*. at 885.

Analyzing Adams' due process claim, the Seventh Circuit first clarified that Adams' good conduct credit was restored through a habeas petition, and thus, the only discipline remaining at issue was the 730 days Adams had served in segregation. *Adams*, 91 F.4th at 885.  The court then explained that a less stringent due process standard applies to inmates facing transfer to

disciplinary segregation as opposed to those facing disciplinary actions affecting the duration of their incarceration.[5] The latter typically requires "advance notice of the charges, a hearing before an impartial decisionmaker, the right to call witnesses and present evidence (when consistent with institutional safety), and a written explanation of the outcome." *Id.* at 889 (citing *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007). When, however, an inmate is facing only a disciplinary action such as segregation, nonadversarial due process satisfies the Due Process Clause *Id.* at 895 (citing *Westefer v. Neal,* 682 F.3d 679, 684-85 (7th Cir. 2012)). As it relates to calling witnesses, the Court in *Adams* noted that "informal due process calls for notice of the reasons for the inmate's placement and 'an opportunity to present his views.'" *Id.*

Addressing Adams' challenge on the basis that he was denied an impartial decisionmaker, the Court noted that Adams only challenged the impartiality of Peltier, who conducted the disciplinary hearing of the original assault charge. *Adams*, 91 F.4th at 896. Particularly, Adams alleged that Peltier had told him that "higher ups" had predetermined the outcome of the hearings, adding that the investigative officer was going to make sure that Adams went to segregation for "a long time." *Id.* The allegedly biased investigative officer even followed up on Adams's case later, intervening as another officer, Andrews, reviewed Adams's procedural challenges (first amended assault charge).

The Court first clarified that an impartial decisionmaker is a necessary part of due process, even under the informal due process standard. *Adams*, 91 F.4th at 896. The Court then recognized

---

[5] The majority opinion as to the due process claim is set forth in Judge Eve's concurrence opinion, which was joined by Judge Kirsch; Judge Rovner's opinion represents the majority opinion as to all other claims but constitutes the dissent as to Adams' due process claim. *See Adams*, 91 F.4th at 896 n.1.

that the initial assault proceedings were not "the model of due process" but nonetheless concluded that "any failure to provide a neutral arbiter at that stage was harmless." *Id.* The Court reasoned:

> The outcome of the Peltier hearings was initially *a conviction in the assault case*, which was later over-turned. Then in September 2018, Hearing Officer Carpenter presided over another case with the same conduct—finding Adams guilty. Adams does not challenge the impartiality of Officer Carpenter. In the end, an internal administrative appeal process concluded that the allegations against Adams had been too vague to support the assault charge. This is due process at work, even if Adams did not get a fair shake in front of Peltier. Through Carpenter and the appeals process, Adams secured a neutral adjudication, a fair appellate decisionmaker, and ultimately, the charge's dismissal and expungement.

*Id.* (emphasis added).

Defendants aver that this case is identical to *Adams* in that both plaintiffs challenged their time in disciplinary segregation due to the denial of an impartial decisionmaker at the relevant disciplinary hearings and that both plaintiffs' violations were expunged after plaintiffs had served their time in disciplinary segregation. Because the *Adams* court found that the ultimate dismissal of the assault charge and expungement of the imposed sanctions rendered any prior due process deficiencies of the disciplinary hearing a harmless error, Defendants argue that the expungement of Plaintiff's hunger strike ticket similarly bars Plaintiff's due process claim for any deficiencies of the hunger strike disciplinary hearing even if Plaintiff had already served his time in segregation.

Unlike Plaintiff, however, Adams did not directly challenge the expunged sanction, *i.e.,* the one-year disciplinary segregation imposed pursuant to the assault offenses. Rather, he challenged the two years he spent in department-wide segregation that was imposed pursuant to the reclassification decision to which the assault conviction was merely a predicate. *Adams*, 91 F.4th at 891. This is not a distinction without a difference. Adams did not claim that there was any due process violation on the reclassification decision. He attempted to show a more attenuated

connection. He claimed that the lack of impartiality in the original assault hearing, which was one of the seven predicate offenses of the reclassification decision, was sufficient to render unconstitutional the two years he spent in department-wide segregation for the reclassification decision, even though the very sanction of the assault conviction was later expunged. Indeed, the defendants' brief in *Adams* specifically pointed to that matter to show *Williams* was distinguishable from the case before the *Adams* court:

> *Williams* dealt with a different issue: whether the expungement of the disciplinary conviction was enough to satisfy due process. *Id*. at 156. Here, the defendants provided evidence that Adams received sufficient informal due process for the placement in disciplinary segregation - not just that the conviction was eventually expunged-and Adams did not make a due process challenge regarding the placement in department-wide restrictive housing, which was really why he spent so much time in restrictive housing.

*Appellees' Brief*, *Adams v. Reagle*, 91 F.4th 880 (7th Cir. 2024), No. 21-1730, 2022 WL 4100799, at *31–32.

This Court also finds instructive that the *Adams* court did not discuss *Morissette* and *Williams* in finding that the administrative appeal process had cured any prior due process deficiencies. Had the *Adams* court intended to deviate from the *Morissette* and *Williams* line of cases and hold that expungement of an imposed sanction bars a due process claim even if an inmate has already served that sanction, it would have more likely referred to those cases. It did not. The Court declines Defendants' invitation to read in *Adams* more than the court explicitly stated therein.

Defendants also called the Court's attention to *Ealy v. Watson*, which was decided after the Court entered its order on Defendants' motion for summary judgment. 109 F.4th 958, 967 (7th Cir. 2024). There, the Seventh Circuit reiterated that only informal due process is afforded to

inmates facing only disciplinary action like segregation, as opposed to disciplinary actions affecting the duration of their sentence. *Id.* at 965-66. However, the alleged procedural deficiencies there did not implicate challenges to the impartiality of the decisionmaker. *Id.* at 966 ("Ealy urges that his due process rights were violated because he (1) was not permitted to view the visiting room video footage, (2) was not allowed to question witnesses, and (3) the adjustment committee's decision lacked a sufficient explanation."). Further, the *Ealy* Court was not faced with the issue of the viability of due process claims where the alleged procedural deficiencies have been corrected through the administrative appeal process. Accordingly, the Court does not find *Ealy* to be on point.

Because the Court finds that *Adams* and *Ealy* did not introduce "a controlling or significant change in the law or facts since the submission" of the Defendants' motion for summary judgment to the Court and because reconsideration is not warranted under any other basis, Defendants' Motion for Reconsideration (Doc. 57) is **DENIED**.

## Conclusion

Based on the foregoing, Defendants' Motion for Reconsideration (Doc. 57) is **DENIED.**
**IT IS SO ORDERED.**
**DATED: December 9, 2024**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**